Thank you, Your Honor. I'm Daniel Kaplan. I represent the appellant Marco Venegas-Reynoso, and I'm going to watch the clock and attempt to save two minutes of time for rebuttal. All right. Watch the clock. In Mr. Venegas-Reynoso's trial, there was no evidence of any link between him and a drug trafficking organization. There was no charge of conspiracy. And Mr. Venegas-Reynoso did not open the door to the relevance of evidence about drug trafficking organizations by, for example, arguing about the lack of fingerprint evidence on the drug packaging or noticing his intent to introduce his own expert to give testimony about drug trafficking organizations. Sotomayor, with your initial premise, there's no link to a drug trafficking organization. There is a tire with 33 pounds of drugs in it, and the government theory had to be that the defendant, this defendant, was not the person who organized and did everything. So almost by definition, they're saying that he was connected to an organization in some way, albeit the particular charge is as a mule. Well, Your Honor, respectfully, I don't agree with that. Certainly, the government's theory had to be that he knew, and the government's theory was that he knew, and that was the only disputed issue in the trial. But did the government's theory – did the government – was the government entitled then to bring in evidence that it was specifically a drug trafficking organization? The kind of organization about which the expert, Mr. Agent Johnson, testified, an organization with fence spotters, an organization with an army of couriers who are paid depending on their tenure with the organization, an organization with all these levels of infrastructure that they described, that that expert described? And the answer is no. There's a clear line of case law in this Court from Vallejo through McGowan, Varela-Rivera, Pineda-Torres, all of which says that the government can't simply take as a unproved premise for the introduction of this sort of testimony that, of course, a large cartel or organization must be behind any smuggling of drugs across the border, because that's not something that can simply be assumed. It has to be proved with evidence. Now, just to sharpen the point a little bit, it could be shown, perhaps, that other types of organizations, like the Italian Mafia or Al-Qaeda, have sometimes smuggled drugs to make money for their operations. Could it be simply assumed that it was okay, because it goes to the issue of knowledge, to have an expert talk about the structure of Al-Qaeda cells or Mafia soldiers? Well, why not? To the extent that the issue is whether he was, in fact, a blind mule or not. If he was not a blind mule, then he would have been associated with a drug organization. That's the factual issue for the jury to resolve. So are you saying that if that's the issue, the government can't put on evidence of the nature of drug organizations and their use of unwitting couriers to rebut the claim of your client that he was simply a blind mule and can't be connected? Their argument is, as I understand it, given the volume of drugs involved and the amount of money at risk, it was atypical, to use the agent's language, for them to be an unwitting carrier. Why isn't that evidence relevant to disprove his claim that he didn't have a connection? It's sort of a chicken and egg or circularity problem. Well, I agree with what you say. It's a chicken and egg problem because the government is creating the government's position, which has been rejected repeatedly in all those cases I named, is that it can start with the egg and the chicken. I don't know how to make this analogy work, Your Honor. But the point is, you can't have the assumption that makes it relevant be the assumption that it must be relevant. And that's essentially the logic behind that has been rejected by this Court. And the logic that government is trying to apply here is that we have to assume that it was a cartel, therefore, because we assume that this evidence is relevant. And it's no more relevant based on a mere assumption than a mere assumption that maybe it was al Qaeda. And, of course, that would be highly prejudicial to talk about al Qaeda cells when, as here, there's zero evidence, and this has never been disputed, there's no evidence linking this defendant to a drug-trafficking organization like that. Let me clarify your position. Is your argument that because there's no evidence that Mr. Venegas-Renoso was linked to any drug organization, that the government can't utilize an expert even to rebut the argument that he lacked knowledge? Or is it that the government can utilize expert testimony, but that they went too far? So, for example, if the claim by the defendant is that he didn't know that there were drugs in his car, can the government at least present expert testimony to say, well, that's very unlikely or atypical because normally you wouldn't entrust a million dollars' worth of drugs to a blind mule, and then that's okay, but then anything beyond that in terms of how the structure operated would then be going too far under 403? Okay. The answer to the first part of your question is, yes, that's my position. They can't simply assume that and bring in the organ or bring in that type of evidence, and that's what those four cases stand for. The answer to your second question is, yes, also, the government could lay a proper foundation for bringing in this type of evidence if they could have an expert get up and say, because of the amount of drugs involved here, it is unlikely because of my experience in this field tells me that a drug trafficking organization must have been behind this because of the amount of drugs. Now, here's the problem. Did they do that in this case? No. I read this record through with a fine-toothed comb and looked for any place in the record where the government asked Agent Johnson or anybody who was presenting evidence, does the amount of drugs lay a foundation in your mind as a constitute evidence that this was a drug trafficking organization with the fence spotters and the couriers and et cetera, et cetera? They did not do that. Why didn't they do that? I have no idea. The judge gave them an embossed invitation and said, here's a way you can make this relevant. And they still didn't do it. So just to clarify, I want to make sure I understand your position. You're saying that under the facts of this particular case, the government could introduce the types of evidence that was introduced here, except that they didn't lay the appropriate foundation for that? Yes, they could. And I don't know if it's true that the amount of drugs shows that it must have been a cartel. But if, in fact, it's true and an expert could say that, this would be a different case. I will certainly concede that. They just simply didn't lay the foundation which puts this case into the same category as those four cases. Counsel, I want to be sure. I'm a little concerned that you may be asking for more than you have to, and that is to take the position that the government, there was error committed by allowing the testimony about the organization at all, as distinct from what I think is the sharp point, which is the defendant's intent, and that is it went too far because of the nature of the inquiry was basically, in my opinion, he knew. Actually. I don't think – I'm a little concerned that you may be asking for more than you can  I take that correction, Your Honor. And just to clarify, Issue 2 in this appeal is about the specific opinion that was given, and this is something the government arguably can do, depending on how you come out on Issue 2. But that was where he simply said, in my opinion, drug traffickers, not necessarily big organizations with all this infrastructure, but drug traffickers don't use unknowing couriers. If you think that's okay, that's something the government can do, and it doesn't affect Issue 1. So that is a fair point, and I accept that. And I would like to retain the balance of my time. You may. Good morning. My name is Christine Keller, and I represent the United States. I want to start sort of where this inquiry went with counsel here with regard to a question that Judge Garbus asked with regard to sort of what position the government is supposed to be in when it's – when it's brought one of these types of cases. Specifically, the district court, I think, made a very cogent analysis of what happens when you're dealing with a defendant who has over a million dollars of drugs hidden in his vehicle and claims to have no knowledge of who put them there or even how they got there. And the fact of the matter is, if he can – if the defendants can say, I have no idea who put it there, why is the government to be precluded from reasonably arguing that when you're talking about a million dollars' worth of drugs, it very likely was a drug trafficking organization? And the district court, I think, aptly noted that the defense can't have it both ways. They can't say, we don't know who put it there. It could have been anyone. But, government, you can't say it may have been a drug trafficking organization. The evidence in this case is not simply Special Agent Johnson's testimony, moreover. The evidence showed that the defendant entered the port of entry with over 15 kilos of cocaine hidden in a undermounted spare tire that he obscured with the metal security door. He was sent to secondary because, despite having frequently crossed the border, he appeared nervous under standard questioning and refused to make eye contact. He had four cell phones, $200 in his pocket, and $1,200 hidden under the fabric of a seat cushion that he said he put there because he was afraid that they would take it. He didn't appear shocked or surprised once he learned that there was a substantial amount of drugs in his vehicles, but he claimed no knowledge of it. And when the agent begged him to give them a scenario in which that much drugs could have been placed in his vehicle without his knowledge, he's clarified that no one had had access to his vehicle. His story evolved at trial when he took the stand on his own behalf, and he claimed that he was in Mexico to construct that construction door, to construct that security door, even though an officer, Officer Slaughter, had testified that he had seen that door in the defendant's vehicle on multiple other times. He now claimed that the $1,200 in the seat was there because that's where he liked to save it. But the biggest evolution had to do with the drugs itself. Once he got on the stand, he told the jury that he disclosed a previously unidentified affair with a previously unidentified Mexican mistress who he claimed lured him away from his truck for a five-to-six-hour tryst at an unnamed hotel, during which time her associates must have put the drugs in the vehicle. This was the version and evolution of the story he presented to the jury, substantially different from that that he presented at trial, and that the jury, in fact, rejected. And all of this evidence is independent from anything that Special Agent Johnson had to say. Kennedy, so the argument that counsel is advancing here is that where was Johnson asked at all as to, in his opinion, there had to be a drug organization behind all of this? I believe that was his testimony from the start, was that the ñ I mean, I don't know that he had a specific statement where he said that there is a threshold amount required in order for a drug trafficking organization to be involved. But the scope of testimony from primary officer through Special Agent Johnson focused specifically on how drug traffickers have evolved their trends over time in order to bring drugs concealed from law enforcement into the United States and the methods that law enforcement undertakes to interdict those drugs. Was there any objection to lack of foundation? Absolutely not. Okay. And in fact ñ I'm sorry. Okay. So the principal focus of the defendant's brief has been on whether Agent Johnson crossed the line in testifying against a ñ in limiting a ruling by the Court that he could not testify or say that blind mules were never used. Well, that was a ruling that changed after opening statements. After opening statements, what had happened was, is there was a motion in Limine and the Court ruled that we could introduce the type of evidence that this Court allowed in Sepulveda Barraza. Right before opening statement, we were advised that we should not mention the words drug cartels. And we refrained from doing so in our opening and, in fact, throughout the trial. Well, I'm referring to the Court's ruling on the objection during Johnson's testimony, which is ER 323 to 324. And the objection at that point was 322. Mr. Titterington, in your ruling, Judge, I believe you said that they couldn't say it never happened and he just did. Oh, yes, Your Honor. And the Court clearly found that Special Agent Johnson never said that it never happens. What he said was, in the case of the ñ Okay. That's what I wanted to ask you about, because the Court said, I said he could do it. What I said he could do is ñ excuse me. Let me start. What I said he could do is use his personal experience. He could never say that it never happened, but he could use his own personal ñ he could testify about his own personal experience, and he said in his own personal experience it's never happened. Right. And there was a ñ let me just be clear about this. That's not referring to drug cartels. It's talking about blind mules. It's particularly talking about blind mules. What he had said was he was asked generally about the use of unknowing couriers by drug trafficking organizations. Through the scope of that testimony, he used the word typically 35 times. He never said it couldn't happen, that it's never happened, or that it could not in the future happen. What he further went on to say is that in the cases that he has personally investigated, that he has not seen it happen. And what agents have told him. And what agents that he has talked to have told him. Basically said, look, I've been in this business. I've never seen it. Everybody tells me it doesn't happen. So he didn't say it never happens. But he says, boy, in my universe, and I'm widely dispersed in this universe and experienced in it, it doesn't happen. Judge, I do don't agree that he said that everybody has told him that it never happens. His experience was limited to the District of Arizona, working at the San Luis Port of Entry and being a special agent. Okay. Here's what he said. ER-323, based on the information I've received directly and indirectly from other law enforcement officers. He didn't say and limit that to anything. And as I state, typically organizations do not know. It used to be called blind moles. I think he meant mules or somebody, because moles are by definition blind. But basically that would just be an unwitting individual who had no idea that they were bringing in contraband of any type into the country. And then he goes on to explain all the reasons why a drug cartel or organization would not entrust this amount of drugs. Yes, Judge. But I believe that in the context, that testimony goes on for some time. I know it does. And in the context of that testimony and in cross-examination, it was made clear that he is not saying that they could not be used or that he had knowledge of absolutely every drug crossing that has ever occurred within the United States. That is not the breadth of his testimony in this case. It was limited to his personal experience. Okay. I'd like to ask you a question. Yes, sir. Are you familiar with our panel's memorandum disposition in United States v. Flores that was issued on February 5th of this year? I'm not. Okay. It involves testimony involving the blind mule. And this panel is a panel. Now, this is a mem dispo, not an opinion, but it's fairly lengthy. And the panel is judges of Scanlon, Trott, and Clifton. And it says, At oral argument, counsel for the government acknowledged that evidence that blind mules exist came to the attention of his office after this trial came to a close. He also represented that, to his knowledge, the office was no longer putting on testimony to the effect that blind mules do not exist. We trust that the government will not submit expert testimony that it knows is inaccurate. Are you familiar with that? I'm not familiar with it, but I don't believe that Special Agent Johnson ever said that they didn't exist and couldn't exist. He said that typically, 35 times typically, they're not used. He gave the reasons that they're not used. He gave he was asked specifically about the people that he had interviewed, that none of them had admitted that they were, in fact, blind mules. And he was extensively cross-examined on the fact that he can't possibly know everything. And that's why he didn't say they're never used. He said typically in these circumstances. And your response on the Chavez case is that that didn't come to the attention of the office until after the trial? Yes, Your Honor. It was at the time of our trial, all that existed was an uncorroborated tip that had been told to the FBI two days before our trial began. Right. Judge Fischer, may I ask you a question? Please, go ahead. One of the things that we're trying to do is to guide district judges who have to make the kind of decisions that the district judge here did in terms of how much testimony is going to be admitted and where to draw the line. Now, it occurs to me that one way to articulate that might be to say that we want the expert witness to give expert witness testimony, but to stop short of presenting the arguments that the prosecutor should make, and that is, it may be valid expert testimony to say typically they have a lot of money involved, they want to be very careful about watching where the drugs are, they don't want to have spotters, et cetera, but to stop short of saying something that would be interpreted as being, and therefore, because of those objective facts, you should find what his mental status is. And that's – it's a question of the role here and that when we get down to an agent's individual personal experience, I'm very troubled by that, because he basically is saying, look, I've been around a long time, I never heard of it happening, it didn't happen here, which is the unstudied premise, and he didn't have to have that. You could have had, without his experience and the agents he talked to in all those cases, I never heard of it, which we now know is – it does happen, so he might have heard of it, but I'm not saying he did in this case. Have him stop short of giving that and simply say all the reasons, the objective reasons from which the prosecutor can get up and say, now, you understand, they have to follow these drugs, they've got to worry about somebody. They might have worried that if this guy was a blind mule, he'd have had a flat tire. And without knowing that he would have, therefore, necessarily had to change his tire, and whereas if he was a participant or knowledge, he's going to know he's got a flat tire, he's not going to change that tire, he's going to have to do something else. I'm just concerned about having stepped over the line here and trying to use that, the criterion being something that's short of saying directly or implicitly, therefore, although the prosecutors say it, therefore, on these facts, you must find or should find that he had the requisite knowledge. Do I have the opportunity to respond just briefly to that? Yes. Your Honor, I am sensitive to the Court's concern in this regard. And in fact, this, Special Agent Johnson actually, we think, went less far in terms of his testimony than the agent in Sepulveda-Barraza, who actually offered the affirmative testimony that the defendant's claimed lack of knowledge was, quote, unquote, implausible. Special Agent Johnson offered no such direct testimony as to the implausibility of this defense. What he did was talk about it generally and in typical terms, and then what his experience had revealed and admitted to the limitations of his experience on cross-examination. And so I just wanted to briefly, if that is sufficient for Your Honor. But now you know what happened in the Texas case. We now know that. I mean, could you in good conscience put this fellow on and testify exactly the same way in another case tomorrow when you're aware that the government has made charges that there was a blind mule in some other case? I do believe, Your Honor, that he would be able to say without hesitation that it is not, it's still not the typical modus operandi of drug trafficking organizations to utilize blind couriers simply because there is now a documented case in Texas. I do think that now that Chavez has come to light, that he would certainly have to acknowledge that he's familiar with that circumstance and not to take too much time. But I think we go into great detail in our brief, the limited impeachability factor of Chavez, given the wholly distinguishable facts in Chavez as opposed to. Okay. We're going way over time and we'll debate it as judges. But I do want to clarify one thing. Are you saying, in response to Judge Garbus' question, that you would put Johnson on and have him testify, typically it doesn't happen and not qualify it for the jury and rely on the defendant to be knowledgeable about the mem dispo and say, isn't it a fact that the government itself? Oh, no. I'm sorry, Your Honor. In fact, I've actually done this in a case post this, where the witness acknowledges that it's typically not done and talks about the case of Chavez, of how it was done and how the constraints that were placed on those. I'm sorry if I misspoke or if I wasn't clear. Absolutely not. I think you – I think they do have to acknowledge Chavez. All right. Thank you. A few quick points, Your Honors. Page 324, lines 6 to 7, is where Agent Johnson said, quote, That does not happen, referring to the use of blind mules. That goes to issue 2. What was his side on that? Page 324, lines 6 to 7. That's referring to issue 2. Now, getting – I just needed the page. Okay. Chavez has come up. What Chavez proves now beyond any dispute is that drug traffickers, people who are getting drugs across the border, are not necessarily drug trafficking organizations or cartels. They're not necessarily the big organizations with all this structure to them with the fence spotters and the army of couriers that Agent Johnson testified about. We know that for an absolute fact now. That was two guys, a locksmith in Texas, and some teenagers. That was it. There was nothing resembling the major drug trafficking organizations that Agent Johnson described at great length in his testimony here over repeated objections by the defense counsel at trial. As far as the amount of drugs, Your Honor, the government has not – has not disputed what I said. They did not use their expert or anybody else or any other evidence to lay a foundation for the amount of drugs providing a proper foundation for this kind of testimony. And I would point out in the Varela Rivera case, there was as much or more in drugs. There was 223.1 pounds of cocaine plus 519 grams of meth. Here we have 33 or so pounds of cocaine. Maybe it was worth more than that. Very easily could have been same issue applied. That expert testimony was improper. Okay. So thank you, Your Honor. Thank you. Thank you, counsel, both. This has been an interesting case with evolving jurisprudence and evolving factual foundations. The case just argued is submitted.
judges: Garbis, Fisher, Nguyen